UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SAINT SURIN EDOUARD, on behalf of himself and
others similarly situated,

                              Plaintiffs,          18-CV-05554(BMC)

      -against-

NIKODEMO OPERATING CORP. d/b/a FLORIDIAN
DINER, DIMITRIOS KALOIDIS, IOANIS
PARAPONIARIS and STEVE ZAHARAKIS,

                              Defendants.

------------------------------------------------------------------X

# PLAINTIFF'S MEMORANDUM OF LAW
# IN OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS AND COSTS

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

    I.    DEFENDANTS FAILED TO MEET THEIR BURDEN TO SHOW SANCTIONS ARE APPROPRIATE................................................................................................................ 2

        A.    The Claims, Including the Motion for Class Certification, Were Not "Entirely Without Color"................................................................................................................ 2

        B.    No Evidence Suggests Bad Faith ................................................................................ 7

    II.    IF THE COURT IMPOSES SANCTIONS AGAINST PLAINTIFF, THEY SHOULD BE LIMITED ........................................................................................................................ 13

    IV.    THE RULE 68 SHOULD NOT BE OPERATIVE HERE ........................................... 14

CONCLUSION............................................................................................................................ 15

## TABLE OF AUTHORITIES

**Cases**

Almanzar v. 1342 Nicholas Ave. Rest. Corp.,
14CV7850, 2016 U.S. Dist. LEXIS 155116  (S.D.N.Y. Nov. 7, 2016) ....................................... 15

Blair v. Inside Edition Prods.,
7 F. Supp. 3d 348 (S.D.N.Y. 2014) ................................................................................................ 2

Boone v. Primeflight Aviation Servs.,
16-CV-6077, 2018 U.S. Dist. LEXIS 28000 (E.D.N.Y. Feb. 20, 2018) ........................................ 9

Einhorn Yaffee Prescott Architecture & Engineering, P.C. v. Turpin,
94-CV-830, 1995 U.S. Dist. LEXIS 20546 (N.D.N.Y. May 12, 1995) ......................................... 6

Eisemann v. Greene,
204 F.3d 393 (2d Cir. 2000) ........................................................................................................... 2

Huebner v. Midland Credit Mgmt.,
14 Civ. 6046, 2016 U.S. Dist. LEXIS 156246 (E.D.N.Y. Nov. 10, 2016) .................................... 7

Marcelino v. 374 Food, Inc.,
16 Civ. 6287, 2018 U.S. Dist. LEXIS 51582 (S.D.N.Y. Mar. 27, 2018) ....................................... 5

Ramos v. Nikodemo Operating Corp.,
16-CV-1052, 2017 U.S. Dist. LEXIS 216246 (E.D.N.Y. Aug. 7, 2017) ....................................... 8

Scholastic, Inc. v. Stouffer,
221 F. Supp. 2d 425 (S.D.N.Y. 2002) ........................................................................................... 6

Torres v. Gristede's Operating Corp.,
628 F. Supp. 2d 447 (S.D.N.Y. 2008) ......................................................................................... 12

**PRELIMINARY STATEMENT**

Plaintiff, Saint Surin Edouard, proved at trial that Defendants did not pay him in accordance with the New York Labor Law and that Defendants further violated the Labor Law's Wage Theft Prevention Act. Judgment has been entered in the amount of $3,419.32 and Plaintiff has moved for attorneys' fees in the amount of $43,360.00.

The bulk of Plaintiff's case was handled by Frank & Associates, P.C. At or about the time managing partner Neil Frank[1] was disbarred, the case was transferred to Famighetti & Weinick, PLLC, who handled preliminary pre-trial matters and trial.

After the initial conference in this case, Defendants conveyed to Plaintiff's prior counsel a Rule 68 offer in the amount of $6,000. Through no fault of Plaintiff as detailed below, the offer was not accepted. But, when new counsel appeared and inquired of Defense counsel as to the status of settlement discussions, counsel suggested that the Rule 68 offer could be put back on the table if Plaintiff would accept it. After meeting with the Plaintiff and prior to trial, Plaintiff's counsel told Defense counsel that the case could be settled for the $6,000 Rule 68 amount. Defendants refused to settle or to discuss settlement and the case proceeded to trial.

Now, Defendants seek sanctions against Plaintiff and his prior counsel arguing, among other things, that Plaintiff and prior counsel's conduct caused "the parties and this Court" to spend time and money resolving a motion. Further, as to Plaintiff specifically, Defendants argue that because the Court credited Defendant's trial testimony instead of Plaintiff's, sanctions are appropriate against him personally, because of his alleged "untruthfulness." As discussed below,

---

[1] Herein, we attempt to address all Defendants' arguments regardless of whether Defendants intended individual arguments to apply to only Mr. Frank or to only Mr. Edouard. We do not, however, represent Mr. Frank and this submission is made on behalf of Mr. Edouard only. We do not know Mr. Frank's intentions concerning this motion, but we have forwarded copies of Defendants' papers to him.

Defendants' arguments do not come to close to meeting the remarkably high standard established by the Second Circuit for imposing sanctions. Moreover, imposing sanctions against a prevailing wage theft plaintiff based on credibility determinations, is a dangerous precedent.

## ARGUMENT

**I.   DEFENDANTS FAILED TO MEET THEIR BURDEN TO SHOW SANCTIONS ARE APPROPRIATE**

To impose sanctions under the Court's inherent power or under 28 U.S.C. § 1927, "a court must find clear and convincing evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith – that is 'motivated by improper purposes such as harassment or delay." Eisemann v. Greene, 204 F.3d 393, 295-96 (2d Cir. 2000) (quotations omitted). Clear and convincing evidence is the "most rigorous burden of proof in civil cases" requiring the fact finder to "come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." Blair v. Inside Edition Prods., 7 F. Supp. 3d 348, 358 (S.D.N.Y. 2014) (quotations and citations omitted). The decision to impose sanctions should be made "with restraint and discretion." Eisemann, 204 F.3d at 295-96 (citation omitted). As discussed below, here, Defendants have not established either necessary element for sanctions.

**A.   The Claims, Including the Motion for Class Certification, Were Not "Entirely Without Color"**

Defendants argue that (i) the motion was without color because Plaintiff showed "no information about a single other class member's existence," (ii) Defendants presented "a dozen cases" analyzing the law of the District so Plaintiff could not have had a reasonable basis to file the motion, and (iii) Plaintiff's testimony was not credited at trial so sanctions are appropriate. These points are disputed below.

### i. The Motion Was Not Denied for Failure to Identify Class Members

In denying class certification, the Court determined that Plaintiff failed to show two of four elements – typicality and commonality. DE #25 at 2. Were it clear and convincing that Plaintiff could not show numerosity, the Court could have readily decided the motion on this first element. Though we are reluctant to read into the Court's reasoning in skipping discussion of the numerosity element, it is a reasonable inference that the Court believed the element was met, or was a close call but chose to dispose of the motion on elements with clearer outcomes. Either way, clear and convincing evidence that the element was without color, does not exist. Indeed, Plaintiff identified evidence showing numerosity including deposition testimony that the Defendants employed at least 20 employees at any given time and they suffered "significant turnover," suggesting that over the course of two years, the number of class members well exceeded 40. DE #20 at 3.

### ii. The Motion Was Not Denied Because of Clear Authority

Without providing specifics, Defendants assert that they presented to Plaintiff "a dozen cases" concerning law in this District which undermined Plaintiff's position on the class certification motion. But, the Court did not deny the motion based on any clear legal authority. Rather, the Court considered Plaintiff's argument about whether an individualized inquiry would be necessary to determine liability on the rounding claim and found it "not persuasive." DE #25. In other words, the Court did not find that the argument was wholly devoid of merit or entirely without color. Moreover, the Court did not rely on any clearly established authority. Other than citing to some Second Circuit and Supreme Court cases to state the general standards applicable to all class certifications, the Court relied on District Court cases when discussing the legal principles applicable to the specific disputed issues presented in the class certification motion.

3

Again, there can hardly be clear and convincing evidence that the motion was without color when the Court did not rely on any clearly established precedent in arriving at its decision and indicated only that it was not persuaded by Plaintiff's argument.

### iii. Sanctioning a Prevailing Wage Theft Plaintiff Based on Some Trial Testimony Which Was Not Credited is a Dangerous Precedent

Defendants propose that sanctions against Plaintiff individually, are appropriate because he pursued "factually inaccurate claims" and based "on his untruthful testimony." (Def. Memo. at 12). Preliminarily, Plaintiff proved that Defendants did not to pay to him wages which were due and owing to him. Thus, to suggest that that Plaintiff's pursuit of his case was somehow improper because some claims were not proven or the Court did not credit his testimony at trial, lacks any merit. Indeed, Defendants initially denied the allegation that they violated the Wage Theft Prevention Act and they denied that they did not pay spread of hours pay. Compare Complaint DE #1 with Answer DE #8. By Defendants logic, because Plaintiff proved at trial that these denials were false, they should be sanctioned. But, to seek sanctions against the Defendants based on their pleading which is now proven inaccurate or false hardly seems to make any sense at all. So too is it improper to sanction Plaintiff because a fact finder ultimately did not believe his side of the facts.

Moreover, to argue that sanctions are appropriate against a successful wage theft plaintiff who failed on some claims based, at least in part because the trier of fact did not credit the Plaintiff's testimony, is a dangerous and slippery slope. By their very nature, trials present two conflicting versions of facts. Obviously, only one side can be correct, yet the outcome of trials is a verdict and (generally) a money judgment for the plaintiff or a verdict and dismissal for the defendant. Allowing the prevailing side to obtain sanctions because the opposing party's version was not credited is preposterous and particularly dangerous in wage theft cases where public

4

policy favors such plaintiffs bringing their claims. To start sanctioning wage theft plaintiffs who lose at trial risks creating a grave chilling effect and Defendants cite no authority for imposing sanctions against Plaintiff based on these facts.

The cases relied on by Defendants in support of their position are all remarkably different than the facts presented here. In Marcelino v. 374 Food, Inc., 16 Civ. 6287, 2018 U.S. Dist. LEXIS 51582, *20-21, 59 (S.D.N.Y. Mar. 27, 2018), the Court made a specific finding of perjury and expressly disbelieved "most" of Plaintiff's testimony. Moreover, the fabrications were the direct reason for the case to be tried. Id. at 59. Even under such circumstances, the Court was reluctant to impose sanctions without further briefing from the parties.

Here, most notably, there has been no finding of perjury. The Court noted that it "carefully weighed" credibility and found the Defendant Paraponiaris "much more credible." DE #34 at 5-6. The Court based its credibility determinations on, among other things, the consistency of Paraponiaris's testimony, the Court's common sense, and a prior inconsistent statement. Id. at 5-6. Defendants, however, presented no evidence which wholly and unequivocally showed Plaintiff's testimony was a fabrication[2] whereas in Marcelino, the Plaintiff was caught in multiple inconsistencies he created. For example, in a declaration and in the complaint, the plaintiff alleged he started working on a Wednesday, but at trial he testified, "repeatedly," that he started work on a Monday. Marcelino, 2018 U.S. Dist. LEXIS 51582, at *11. In fact, both days were wrong because he started on a Thursday. Id. "More troubling," the

---

2 Defendants submitted photographs of employees sitting and eating, including a photograph of a Ramos plaintiff still employed. Though the Court drew inferences from these photographs (which were taken after litigation commenced and after Plaintiff was terminated), none of the pictures showed Plaintiff sitting and eating, thus this evidence does not unquestionably contradict Plaintiff's testimony or show that his claims lacked merit. Also, Defendants cite no authority for the proposition that it is appropriate to sanction a witness who is impeached with a prior inconsistent statement nor would such a rule make any sense.

5

plaintiff incorrectly identified a defendant at trial, a person with whom he had allegedly worked alongside "practically everyday." Id. Without detailing the many other such instances of credibility issues found by the Court, the Court summarized, saying, "it appeared to the Court that Plaintiff was, in the vernacular, making up answers as he went along." Id. at 13. In sum, Marcelino showed inconsistency in nearly every aspect of his testimony, a far cry from the few credibility issues cited by the Court here.

Similarly, in Scholastic, Inc. v. Stouffer, 221 F. Supp. 2d 425, 440-45 (S.D.N.Y. 2002), the parties did not dispute that the defendant submitted evidence which was "not a true and correct copy" of the subject matter of the litigation and that other evidence was "altered." In fact, the Court noted it was an "inescapable conclusion" that the evidence was altered. The Court easily concluded by clear and convincing evidence that the offending party had "perpetrated a fraud on the court." Id. at 444. Here, again, this is simply a case where one party's testimony was credited over another's. Other than Defendants' own conclusions about Plaintiff's motivations, there is no evidence that Plaintiff fabricated evidence.

In Einhorn Yaffee Prescott Architecture & Engineering, P.C. v. Turpin, 94-CV-830, 1995 U.S. Dist. LEXIS 20546 (N.D.N.Y. May 12, 1995), the defendants (in a Rule 11 motion)[3] established the claims were without color and the purpose of litigation was to harass. The offending conduct included that the plaintiff previously filed two similar lawsuits against the same defendant, no evidence supported the plaintiff investigated his claims, plaintiff's attorney notified defendants' clients of the lawsuit, and plaintiff took actions to endanger contracts of the

---

3 To the extent Defendants seek relief pursuant to Rule 11, the Rule 11 "safe harbor" provisions have not been complied with.

6

defendants. Id. at 17-18. Thus, Einhorn lends absolutely no support for the proposition that sanctions are appropriate here for a plaintiff who had some credibility issues while testifying.

Similarly, Huebner v. Midland Credit Mgmt., 14 Civ. 6046, 2016 U.S. Dist. LEXIS 156246 (E.D.N.Y. Nov. 10, 2016), decided by this Court, did not confront the issue of whether sanctions are appropriate based on "untruthful testimony." Rather, the plaintiff (also an attorney), among other things, continued to pursue his claims "long after it was clear he did not have a viable claim." Id. at 14. Here, Plaintiff had two successful claims, but perhaps more notably, there exists no evidence whatsoever showing that Plaintiff's other claims were not at all viable. Indeed, Defendants did not move for dismissal under Rule 12 or 56 nor did they assert that any of Plaintiffs' filings, including the complaint, violated Rule 11.[4]

In sum, the Court's credibility determinations at a trial are exactly what we expect fact finders to do and which fulfilled the precise reason we have trials, to wit, to determine facts. Defendants submit no evidence of fabrication of evidence and the Court, while certainly expressing doubt about Plaintiffs' truthfulness, did not make a finding of perjury nor was there a finding that Plaintiffs' testimony constituted a fraud on the court. Accordingly, sanctions against the Plaintiff are wholly improper.

**B.     No Evidence Suggests Bad Faith**

Defendants argue that bad faith can be inferred from (i) prior Counsel's conduct and (2) Plaintiff's rejection of settlement demands. These points are addressed below.

---

4   Defendants argue that the claim that the Defendants are subject to the FLSA "never had any basis." Def. Memo. at 10 n.13. That the evidence developed at trial did not support the claim does not equate to the conclusion that the claim "never had any basis." Again, just years before this case, the Defendants settled an FLSA case for $1.5 million dollars. The dollar amount of the settlement and the fact that Defendants settled, instead of moving to dismiss the FLSA claim, suggests there was indeed a good faith belief here that Defendants were subject to the FLSA.

7

### i. The Class Motion Presented Reasonable Arguments and Counsel's Conduct Was not Unreasonable

Clear and convincing evidence of bad faith must include specific factual findings showing satisfaction of the element. Eisemenn, 204 F.3d at 396 (citations omitted). In Eisemenn, the District Court imposed sanctions against an attorney for (1) interposing his own motion in response to motions filed by the adversary, and (2) proceeding with a motion after being warned by the Court that the motion was not appropriate. Id. at 396-97. The Second Circuit reversed. Id. Notably, the Circuit urged caution about inferring bad faith solely from a motion's lack of merit. Id. Moreover, the Circuit further expressed concern about imposing sanctions based on a Court's "advice" about the appropriateness of a motion at a pre-motion conference. Id. at 397.

Here, Defendants similarly seek sanctions against Plaintiff based largely on their belief that the motion was made without color, coupled with the Court's statement about "consequences." Indeed, in support of their bad faith argument, Defendants largely discuss the reasons why it believes the Frank firm used a "doomed motion" to "extract a much larger settlement." (Def. Memo. at 4-5, 9-10).

Defendants' essentially argue that there existed no basis in fact or law for Plaintiff to have sought class certification, so counsel should be sanctioned. This argument strains credulity. Less than two years before the motion for class certification, the same exact Defendants in this case settled a lawsuit concerning wage violations on a class-wide basis. Ramos v. Nikodemo Operating Corp., 16-CV-1052, 2017 U.S. Dist. LEXIS 216246 (E.D.N.Y. Aug. 7, 2017). Further, at deposition Defendant Paraponiaris admitted that the challenged wage payment practices were applied across the board, to all employees. DE #19-4 at 8-9. Additionally, Courts addressing the rounding practice at issue in the class certification motion have noted that the law

8

on this particular issue is not well-established.  Boone v. Primeflight Aviation Servs., 16-CV-6077, 2018 U.S. Dist. LEXIS 28000, *15-16 (E.D.N.Y. Feb. 20, 2018) (noting Courts in the Second Circuit have acknowledged the law on rounding is "sparse").[5]

In sum, presented with a defendant who had recently defended a class action wage case, faced with an adverse party's deposition testimony that he applied the potentially unlawful wage payment policy to all employees, and based on a lack of clear authority on the law of rounding, a reasonable attorney in the same situation would have reasonably believed that a class action was a proper and reasonable manner to adjudicate the claims, or at least that he could make reasonable arguments to advance the law in this area.  Notwithstanding, Eisemann undermines any basis to find bad faith based on the outcome (foreseeable or not) of the motion.

Defendants further argue that bad faith is inferred from the course of conduct, including handling of settlement negotiations and the Rule 68 offer.  Preliminarily, the argument rings somewhat hollow.  Prior to trial, Plaintiff agreed to take the Rule 68 offer amount, if Defendants would renew the offer, which their counsel suggested would happen if Plaintiff agreed in advance to take it.  Weinick Decl. ¶ 12.  Indeed, Plaintiff's counsel noted:

> I've spoken at length to my client and convinced him that accepting the offer of judgment amount is in the best interest of everyone involved, including him. I hope your client agrees with that assessment and will agree to settle for that amount. To state the obvious, settling will avoid the time and expense of trial and post-trial work, including your proposed motion which Judge Cogan did not seem to be too enthusiastic to entertain anyway. I think it's a reasonable assumption that your client's legal fees will exceed the $6k with all the work remaining, so at least from a business perspective, it seems to make sense to make the deal. Please let me know as soon as you can.

---

5  Defendants argue that Boone is the "law of this District," which Plaintiff failed to distinguish. With due respect to Magistrate Judge Lindsay who we are sure made a reasoned decision, the opinion of a Magistrate Judge, while persuasive, is simply not "the law of this District."

9

Id.

Not only did Defendants reject the proposal, they refused to negotiate resolution in any manner. Thus, Defendants who purport to be concerned with saving the parties and the Court from spending unnecessary work on this case, caused the matter to proceed to trial and post-trial work, and they did so in the face of at least two claims which could not be defended.

We note this history not for purposes of critique, but to demonstrate the obvious – parties choose to settle or not settle for many factors. We will not attempt to guess at Defendants' reasons for not settling at $6,000 or their reasons for not trying to settle for any other amount, just prior to trial. We assume Defendants have good faith reasons for their decision. Similarly, there is nothing to be inferred about Plaintiff's intent from the history of settlement negotiations. To our knowledge, the most Defendants ever offered to settle the case was the $6,000 Offer of Judgment, which notably, included "reasonable attorneys' fees and costs." Without such additional amounts for fees and costs, prior counsel valued the case at least $42,636,[6] thus the parties were greatly divided in their settlement positions and bad faith cannot be inferred because an offer more than $35,000 below Plaintiff's value of the case was rejected. Of course with hindsight, we can easily second guess the wisdom of the decision, but in the course of litigation with disputed facts such as the circumstances concerning Plaintiff's termination and whether he took a lunch break, it cannot be said the failure to accept the Rule 68 offer was motivated by bad faith.[7]

---

[6] Defendants suggest the $42,636 damage calculation included, reasonable attorney fees. In fact, prior counsel noted that the calculation included attorneys fees "in an amount to be determined," meaning the total damage calculation with attorneys fees was far greater than $42,636. Compare Def. Memo. at 5 n.11 with Ex. E.

[7] As discussed below, Plaintiff did not make the decision, anyway.

10

Moreover, as calculated in Plaintiff's motion for attorneys' fees (DE #36), the pre-offer attorneys' fees exceeded $14,000. Because the Rule 68 offer included attorneys' fees, either the Plaintiff stood to take far less with the accepted offer because it would have been consumed by attorneys' fees, or the attorneys' fees would have had to have been drastically reduced. Either way, not accepting the Rule 68 offer under these circumstances is not clear evidence of bad faith.

Finally, Frank's April 15th settlement demand e-mail is hardly evidence of bad faith nor does the e-mail, in the context of the larger timeline, support bad faith. Typically, a plaintiff's counsel's suggestion of upcoming necessary motion practice furthers settlement discussions <u>before</u> the motion is made. This has the effect of inducing a defendant to invest money towards a settlement, instead of into attorneys' fees. Making a demand after a motion has been briefed would seem to defeat any leverage a proposed motion may have had before the motion is briefed. Moreover, here, Defendants were and are convinced the motion lacked any merit, so it is hard to understand how they might be intimidated by Frank's "you lose we win" statement or how the motion was leverage.

Further, Defendants note that the demand was conveyed "exactly" six weeks before Mr. Frank submitted a resignation to the Appellate Division, Second Department. Within this context, the more plausible explanation for Frank conveying a demand at that time was a hope that he could settle and close the case before his impending disbarment, not that he was making an aggressive demand based on the strength of the class certification motion. In other words, absent the impending disbarment, it is more likely than not that Frank would not have conveyed the April 15th demand, as there does not seem to be any reason or strategy to make such a demand after the motion was briefed.

### ii. No Evidence Supports an Inference of an Improper Purpose

Preliminarily, we note that at the pre-trial conference, the Court asked Defense Counsel to specifically identify who Defendants sought sanctions from. Defendants responded that their motion would be made against only prior counsel, Neil Frank. Some colloquy followed, but at no time during the conference did Defendants suggest the motion would be made against the Plaintiff, individually. Now that Plaintiff has obtained a judgment against the Defendants, they are alleging this whole case is simply Plaintiff coming "back for a second try," after receiving $34,000 a few years prior because Defendants did not pay him properly then, either. But, nothing has changed from the pre-trial conference to now, except the judgment. Thus, Defendants' inclusion of Plaintiff personally in their motion for sanctions, when they previously expressly excluded him, suggests an inference of retaliation. See Torres v. Gristede's Operating Corp., 628 F. Supp. 2d 447, 473 (S.D.N.Y. 2008) ("Bad faith or groundless counterclaims and other legal proceedings against employees who assert statutory rights are actionable retaliation precisely because of their in terrorem effect.")).

Notwithstanding, we are not where we are today because of Plaintiff. On October 1, 2019, Plaintiff's counsel told Defendants' counsel that the case could be resolved for the Rule 68 offer amount of $6,000, an amount defense counsel had previously indicated could be put back on the table if the Plaintiff would agree to it. Weinick Decl. ¶ 12. Thus, Plaintiff has not insisted on "pursuing this matter to trial," as Defendants have suggested. Def. Memo. at 13.

Moreover, we regrettably have to note the circumstances surrounding the decision concerning the Rule 68 offer. It seems the rejection of the Rule 68 offer was apparently not a

decision made by the Plaintiff, personally[8]. As detailed in the accompanying Weinick Declaration, Frank did not advise the Plaintiff about the existence of the Rule 68 offer, nor did he seek Plaintiff's consent to accept or reject the offer. Thus, Plaintiff cannot bear responsibility for a decision he did not make. Indeed, when new incoming counsel met with Plaintiff and discussed the strengths and weaknesses of the case and the merits and drawbacks of settling, Plaintiff agreed to settle for $6,000. When Defendants rejected the proposal and did not otherwise engage in further settlement discussions, Plaintiff was forced to decide between withdrawing a case in which Defendants agreed that liability existed on at least one claim,[9] or proceeding to trial. It can hardly be deemed unreasonable and certainly not bad faith, to decline to withdraw a case where liability is certain on at least one claim, even if the damages are not extensive on that claim. Accordingly, the case went to trial. These facts establish no basis on which to sanction the Plaintiff.

## II.   IF THE COURT IMPOSES SANCTIONS AGAINST PLAINTIFF, THEY SHOULD BE LIMITED

If the Court determines sanctions against Plaintiff personally, are appropriate, the sanction should be limited. The decision concerning filing the motion for class certification was really a legal decision, not based on any fabricated fact provided by the Plaintiff. Edouard, a layperson who does not speak English, surely cannot be expected to understand the legal complexities and nuances of a class certification motion such that he should be held responsible for Defendants' attorneys' fees.

---

8   Regardless of the who made the decision, as discussed above, it was not unreasonable to reject the offer based on the Frank firm valuing the case at more than five times the Rule 68 offer amount.

9   Further, the parties could not agree on the extent of liability and damages for the spread of hours claim. E.g. DE #21-4.

13

Further, if Edouard is deemed responsible for sanctions related to the motion, the fees should be drastically reduced. Defendants seek payment for 49.9 hours of work on a motion which they contend had no basis or support. The Frank firm spent 22.3 hours on the motion, including 1.3 hours researching the cases cited by Defendants. 49.9 hours is excessive time for experienced employment lawyers to spend responding to a class certification motion which had limited exhibits, and which Defendants argue presented such clear issues that denial was certain and the motion "doomed." Accordingly, to the extent sanctions are imposed based on Defendants' counsels' hours spent on the motion, the hours should be reduced by at least half and the attorneys' rates should be conformed to established rates in this District. See DE #37 at 3. Additionally, we are cognizant of the fact that the class certification motion "issue" may be relevant in determining Plaintiff's motion for attorneys' fees (DE #36-38), and we note that to the extent the class certification motion impacts the attorneys' fees award, that also acts as a sanction and should be considered when assessing whether to impose any further sanctions here.

Finally, to the extent the Court is otherwise persuaded to impose sanctions against Plaintiff personally, we respectfully request that the Court consider Plaintiff's position. Plaintiff worked for minimum wage rates in Defendants' diner for years. He currently earns just a bit more than he did at the diner, but hardly wages by which he could pay even a modest sanctions award. Accordingly, to the extent monetary sanctions are deemed appropriate, we respectfully request that such order be limited and related to Plaintiff's limited resources and ability to pay.

## IV.    THE RULE 68 SHOULD NOT BE OPERATIVE HERE

Defendants move for costs because the judgment, as it stands now, is less than the Rule 68 offer. The motion is premature and should be dismissed. Under New York Labor Law, Plaintiff is entitled to reasonable costs and fees, and indeed, Defendants' Rule 68 was made

"including costs and reasonable attorneys fees to date."  DE #41-3 Ferrier Decl. Ex. C.  As discussed in Plaintiff's motion for attorneys' fees, to determine whether Plaintiff's recovery is more than the Rule 68 offer amount, the Court must determine pre-offer attorneys' fees and costs, which has not yet happened.  DE #37 at 13-14.  Accordingly, Defendants' request for costs should be dismissed, or held in abeyance until the motion for fees is decided.

If the Rule 68 becomes operative and the Court relies on the instant submissions to decide costs, we note that Defendants have not submitted evidence of invoices and proof of payment.  Almanzar v. 1342 Nicholas Ave. Rest. Corp., 14CV7850, 2016 U.S. Dist. LEXIS 155116, *66 (S.D.N.Y. Nov. 7, 2016) (noting an itemized law firm invoice of costs is insufficient to establish entitlement to costs).  Accordingly, the requests for costs should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests an order denying Defendants' motion for sanctions and costs.

Dated: Melville, New York
     October 31, 2019                                     Respectfully submitted,

                                                     FAMIGHETTI & WEINICK, PLLC
                                                     *Attorneys for Plaintiffs*
                                                     25 Melville Park Road, Suite 235
                                                     Melville, New York 11747
                                                     (631) 352-0050

                                  By:     __/s/_Matthew Weinick_____
                                               MATTHEW WEINICK